**JF**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS PENNAVARIA,                      :

     Plaintiff,                       :    Civil Action ⟨⟩7-5170

                            :

v.                                      :    COMPLAINT FOR LEGAL MALPRACTICE

                            :

SCOTT DICLAUDIO, Attorney At Law,       :

     And                               :

                            :

LOUIS T. SAVINO & ASSOCIATES, et al. :

     Defendant's                      :

                            :

_____ :



### COMPLAINT FOR LEGAL MALPRACTICE

      Comes now, Thomas Pennavaria, plaintiff, as pro se petitioner, who files this Complaint for Legal Malpractice against defendant's Scott DiClaudio, Attorney At Law and Louis T. Savino & Associates, et al. Plaintiff, Thomas Pennavaria, is currently incarcerated at the Federal Correctional Institution located in Morgantown, West Virginia and the last known address of defendants is Scott DiClaudio, Suite 900, 15th & John F. Kennedy Blvd., Philadelphia, PA 19102, and Louis T. Savino & Associates as Suite 1516 15th & John F. Kennedy Blvd., Two Penn Center Plaza, Phildelphia, PA 19102.

      Plaintiff is bringing this action against the within named defendants; Jointly, Severally, and in the Alternative for Legal Malpractice and says:

### DIVERSITY JURISDICTION

      A basis for federal court jurisdiction exists when (1) an action is between citizens or parties of different states and (2) the action exceeds a specific value of $75,000.00 or more. 28 USCA § 1332.

For purposes of diversity jurisdiction, a corporation is considered a citizen of both the state of incorporation and the state of its principal place of business. An incorporated association, such as a partnership, is considered a citizen of each state of which at least one of its members is a citizen

### COUNT ONE

1.      The plaintiff, Thomas Pennavaria, hereinafter mentioned, is currently a federal inmate at FCI Morgantown, P.O. Box 1000, Morgantown, West Virginia, 26507.

2.      At all times hereinafter mentioned, Scott DiClaudio, Attorney At Law, was an attorney of the State of Pennsylvania.

3.      At all times hereinafter mentioned, the Law Offices of Louis T. Savino & Associates was either a Professional Corporation, a Partnership,  or an Entity formed to do business in the State of Pennsylvania and engaged in the practice of law.

4.      At all times hereinafter mentioned, Scott DiClaudio was an agent, employee, shareholder, partner and/or an independent contractor, engaged in a relationship with Louis T. Savino & Associates, a Professional Corporation, in the practice of law.

5.      Scott DiClaudio  was admitted to the practice of law in the State of Pennsylvania, on a date unknown to plaintiff, and had his principal place of  business at 15th & JFK Blvd.,  Suite 1516, Two Penn Center Plaza, Philadelphia, PA 19102.

6.      The law offices of Louis T. Savino & Associates was at the same address as DiClaudio, 15th & JFK Blvd., Suite 1516, Two Penn Center Plaza, Phildelphia, PA  19102.

7.      Plaintiff, Thomas Pennavaria was indicted in Federal Criminal Court in philadelphia, PA. and engaged/hired Scott DiClaudio, Attorney At Law, of Louis T. Savino & Associates to defend plaintiff

against the criminal charges, and to represent plaintiff in a Federal Jury Trial.

8.      Plaintiff visited the offices of Louis T. Savino & Associates in or around February, 2004, and met with Scott DiClaudio, to discuss representation in connection with the criminal charges and defend plaintiff in a trial by jury.

9.      At this meeting, after review of the criminal charges, a total fee of $10,000.00 was agreed upon by DiClaudio and Pennavaria. Said fee was the total amount due and payable for all services involved with the representation of Pennavaria, to include, and based on a jury trial lasting 5-7 days.

10.     On February 10, 2004, an OFFICIAL CHECK in the amount of $5,000.00, bearing check number 093945164-7 was purchased by plaintiff and delivered to defendant, in partial payment of the agreed upon full fee of $10,000.00. The check was endorsed by Scott DiClaudio and cashed or deposited on February 11, 2004.

11.     Plaintiff, Thomas Pennavaria, received notice that a jury trial would be held on April 14, 2004. Plaintiff subsequently contacted defendant DiClaudio, and reminded him that plaintiff's original attorney, Patrick J. Thomassey, was still listed as the attorney of record for Pennavaria, and that DiClaudio had not entered a notice of appearance in Philadelphia Federal Court. Then and only then, was plaintiff informed by defendant DiClaudio that he had miscalculated the length of the upcoming jury trial. DiClaudio proceeded to ask for an additional $3,000.00 to justify more days at trial, now 10-12 days. DiClaudio informed Pennavaria that if a total amount of $13,000.00 was not received immediately, that he would not represent plaintiff, Pennavaria at trial.

(3)

12.     Plaintiff was contacted by his original attorney from Pittsburgh PA., and was informed that he, Patrick J. Thomassey had received notice of a trial set to commence on April 14, 2004, and that he was still the attorney of record. Thomassey informed Pennavaria that he could not possibly handle a trial in Philadelphia from Pittsburgh, and that he had nothing prepared, as he believed that Pennavaria had engaged the service of another attroney from Philadelphia.

13.     Plaintiff again contacted defendant DiClaudio, and reminded him of the $5,000.00 that he accepted as partial payment of the total fee of $10,000.00 on February 11, 2004, and that Pennavaria was willing to submit the balance of the fee ($5,000.00) immediately. Defendant said that he would not enter a notice of appearance unless I submitted $8,000.00 to cover more trial days. Further, stating that he did not care about the consequences of my other attorney being listed as the  attorney of record.

14.     On April 6, 2004, another OFFICIAL CHECK was purchased by plaintiff from Citizens  Bank, check number 594426690-6 in the amount of $8,000.00. This check was sent to DiClaudio for a total of $13,000.00, $3,000.00 more than the original agreed upon fee.

15.     Defendant,  DiClaudio, as late as April 13, 2004 had still not entered a notice of appearance. Attorney Thomassey received a call from Judge Stewart Dalzell's court room on April 13, 2004 and he was informed that he must be in Philadelphia the morning of April 14, 2004, to represent Pennavaria in a criminal trial. Attorney Thomassey did not understand the problem between Pennavaria and DiClaudio, and neither Pennavaria or Thomassey knew why DiClaudio had not entered a notice of appearance; when in fact he had been paid in full, even the $3,000.00 additional money that was never agreed upon.

16.   Defendant DiClaudio, on or about April 13, 2004 advised plaintiff, Pennavaria, that he had reached a most favorable plea agreement with the United States Attorney's Office. This plea agreement was allegedly negotiated with AUSA Richard Lloret, and ASUA Kathy Stark. The scheduled jury trial date of April 14, 2004 was the next day, and DiClaudio still had not entered an appearance. Pittsbsurgh attorney Thomassey was again reminded, on April 13, 2004, that he was expected in Judge Dalzell's court room the next morning for trial.

17.   On the morning of the scheduled trial, April 14, 2004, defendant DiClaudio, finally entered a notice of appearance on behalf of plaintiff, Thomas Pennavaria. A plea of guilty was entered and accepted by the court on April 14, 2004, the very day of the trial, and Pennavaria was dismissed from any further court proceedings involving the jury trial.

18.   Defendant DiClaudio, had the duty to exercise the knowledge, skill, ability and devotion ordinarily possessed and employed by members of the legal profession similarly situated, in connection with his responsibilities to plaintiff, Pennavaria, and to utilize reasonable care and prudence in connection with those responsibilities.

19.   Louis T. Savino & Associates, a professional corporation in the practice of law, had the duty to exercise the knowledge, skill, ability and devotion ordinarily possessed and employed by members of the legal profession, in connection with its responsibility to plaintiff, Thomas Pennavaria.

20.   Defendants DiClaudio and Savino & Associates breached their duties to defendant, Pennavaria, by their failure to initiate a fee agreement or contract, with plaintiff Pennavaria, explaining

and detailing what they would do for the agreed upon fee.

21.     As a direct result of the negligence jointly, severally, and in the alternative of Scott DiClaudio and Louis T. Savino & Associates, plaintiff, Thomas Pennavaria, was caused to suffer damages.

**WHEREFORE,** the Plaintiff, Thomas Pennavaria, demands judgement against Scott DiClaudio, Attorney At Law, and Louis T. Savino & Associates, jointly, severally and in the alternative for:

A. Compensatory Damages;
B. Interest;
C. Cost of suit;
D. Attorneys fees; and
E. Any other relief the Court may deem equitable and just.

### COUNT TWO

1.     Plaintiff, Thomas Pennavaria, repeats and reiterates each and every paragraph of the Count One of the Complaint  as though the same were set forth at length herein.

2.     Defendant, DiClaudio, informed plaintiff that he had negotiated a plea agreement for a term of imprisonment totalling 37 months. In furtherance, DiClaudio advised Pennavaria that if he  proceeded to trial, he would run the risk of being exposed to a prison term of 16 years, if found guilty.

3.     DiClaudio outlined the Federal Sentencing Guidelines in front of plaintiff, Pennavaria, and showed plaintiff how benificial the plea agreement for 37 months was, and persuaded plaintiff, Pennavaria not to go to trial.

4.     Plaintiff, Pennavaria, trusted attorney DiClaudio, and had no reason to believe that he had not negotiated a favorable plea agreement for 37 months.

5.     Contrary to what defendant, attorney Diclaudio, portrayed to plaintiff, Pennavaria, plaintiff would find out at sentencing,

that there was in fact, a plea agreement, but at no time was there any mention of a prison term of 37 months. Therefore, at sentencing on August 5, 2004, plaintiff was exposed to nearly three times the believed to be term of 37 months (guidelines were 84-105 months).

6.      The conduct of attorney Scott DiClaudio and Louis T. Savino & Associates, was professionally negligent, careless, and constituted a breach of fiduciary relationship which each had with plaintiff Pennavaria.

7.      As a direct and proximate result of the professional negligence, carelessness, and breach of fiduciary relationship, plaintiff, Thomas Pennavaria was damaged.

8.      Defendants DiClaudio & Savino violated the **Rules of Professional Conduct** pursuant to Article V, Section #10 of the Constitution of Pennsylvania, adopted and ordered to take effect on April 1, 1988, more specifically:

Rule 1.1 Competence: **Shall** provide competent representation; Requires legal knowledge, skill, throughness, and preparation necessary for representation.

Rule 1.3 Diligence: **Shall** act with reasonable diligence and promptness in representing a client.

Rule 1.5 Fees:       Offered no fee agreement or contract for services; raised agreed upon fee by $3,000.00

Rule 7.1 Communications concerning a lawyer's services:

                    (b) false, or misleading information; created an unjustified expectation about results a lawyer can achieve, ie. 37 month plea agreement.

9.      Defendants DiClaudio and Louis T. Savino & Associates violated the **Rules of Professional Conduct** in connection with the discharge of their responsibilities  owed to plaintiff Pennavaria.

**WHEREFORE**, Plaintiff, Thomas Pennavaria, demands judgement against Attorney Scott DiClaudio and Louis T. Savino & Associates, jointly, severally, and in the alternative, for:

    A. Compensatory damages;
    B. Interest;
    C. Cost  of Suit;
    D. Attorney's fees;
    E. Punitive Damages; and
    F. Any other relief the Court may deem equitable and just.

## COUNT THREE

1.    Plaintiff Thomas Pennavaria repeats and reiterates each and every paragraph of Count One and Count Two of this Complaint as though the same were set forth at length herein.

2.    Defendant, attorney DiClaudio, used a tactic in convincing plaintiff Pennavaria to agree to signing a plea agreement for 37 months. This tactic consisted of explaining to plaintiff Pennavaria, that if I could cooperate in any fashion with the United States Attorney, that he could keep me out of prison for at least two years, and if I supplied enough information or something very large in nature, that he could get my prison term reduced to 1 year or even probation.

3.    Defendant DiClaudio, explained that it was all important to gather as much information as possible between the plea agreement hearing of April 14, 2004 and the  sentencing date of August 5, 2004.

4.    Plaintiff Pennavaria was able to uncover the name and identification of an individual who bragged of a murder that he was involved in in the Philadelphia - New Jersey area.

5.      Plaintiff Pennavaria immediately mailed a letter with the news of the murder to defendant DiClaudio. Pennavaria was under the impression that this information was of such a huge nature, that he surely would be given probation for this act alone. The information was sent to defendant DiClaudio shortly after the plea agreement was accepted by the court.

6.      Although the plea agreement was dated April 14, 2004 and accepted April 15, 2004, defendant had no contact what so ever with defendant DiClaudio from April until August 2, 2004. Plaintiff tried many many times to phone DiClaudio to inquire about the progress of the information sent to aid in his sentence reduction or probation. Defendant DiClaudio chose not to accept any of the calls nor respond to any letters mailed to him from Pennavaria.

7.      Defendant DiClaudio never mentioned or offered the information to the US Attorney to aid Pennavaria in his quest for a reduction of sentence prior to sentencing. The first and only offer  of the information to the prosecutor was on the morning of the sentencing hearing, August 5, 2005. This was done in the  court  room 5 minutes before the hearing was to commence. DiClaudios offer of cooperation was met  with laughter, coming at such a late time.

8.      As a direct and proximate result of the professional negligence, carelessness, and breach of fiduciary relationship, plaintiff Pennavaria was damaged and prejudiced.

9.      Plaintiffs DiClaudio and Savino violated the **Rules of Professional Conduct**, specifically Rule 1.1, 1.3, and Rule 7.1, Supra.

10.      Defendant DiClaudio again gave a false or misleading statement and created an unjustified expectation about the results he could achieve on behalf of plaintiff Pennavaria.

11.     Defendants DiClaudio and Savino violated the Rules of Professional Conduct in connection with the discharge of their responsibilities and duties owed to plaintiff Pennavaria.

**WHEREFORE,** Plaintiff Thomas Pennavaria, demands judgement against Scott DiClaudio and Louis T. Savino & Associates, jointly, severally, and in the alternative, for:

    A. Damages;
    B. interest;
    C. Cost of suit;
    D. Attorney's fees;
    E. Punitive damages; and
    F. Any other relief the Court may deem equitable and  just.

### COUNT FOUR

1.     Plaintiff Thomas Pennavaria repeats and reiterates each and every paragraph of the First, Second, and Third Counts of this Complaint as though the same were set forth at length herein.

2.     Defendant DiClaudio never spoke to plaintiff Pennavaria until August 2, 2004. DiClaudio explained that he was trying to get a postponement for the sentencing hearing. DiClaudio informed Pennavaria to call back at 3:30PM to find out the results. Plaintiff called at 3:30 as insturcted and was  informed to call back in 15 minutes. plaintiff called  back at 3:45PM and was told to call back in 30 minutes. Plaintiff called back at 4:15PM and again was told to call back in thirty minutes. Plaintiff called at 4:45PM, and DiClaudio told Pennavaria that he would call back after 5:00PM and if Pennavaria did not hear from him that evening, he would contact Pennavaria the next morning.

3.     Plaintiff never heard from defendant DiClaudio until 9:30AM the next morning, August **3**, 2004. This call came from Judge Stewart Dalzell's court room.

4.      DiClaudio asked Pennavaria where he was, and plaintiff Pennavaria explained, "I am in my office, where you called". Defendant DiClaudio proceeded to tell plaintiff that he was to be in Philadelphia for the[his]sentencing hearing. Plaintiff then asked, "You said you would call me last night about the postponement, or this morning". Defendant DiClaudio  said I will have to call you back, I am in front of the Judge.

5.      Defendant called back and asked if I had my airplane tickets or a reservation. I explained that I had them for the next day, August 4, 2004, as I believed the hearing was set for the morning of August 4, 2004. I was then asked to fax a copy of the itinerary and the electronic ticket to the Judge's chamber.

6.      Defendant DiClaudio called back and said that the Judge accepted the mistake, and reset the sentencing hearing for Thursday, August 5, 2004.

7.      I was told by defendant DiClaudio at the sentencing hearing on August 5, 2004, to not say anything to the Judge about what had happened with the mix up on the sentencing date. I replied that it was his fault for not taking my last call and advising me that he would call me, as it turned out to be the morning of the actual sentencing, to let me know if it was postponed or not.

8.      I was in shock about the entire episode and granted his wish, not saying anything to the Judge in my statement before the court.

9.      This action directly caused by the negligence of defendant DiClaudio caused serious harm and created undue damages and prejudice to plaintiff, Pennavaria.

10.     Defendant DiClaudio came to the sentencing hearing totally
unprepared. DiClaudio had not prepared even a "Sentencing Memorandum"
on behalf of Pennavaria. DiClaudio made no mention of any details
involving the serious medical conditions of plaintiff Pennavaria,
or Mrs. Pennavaria. This act of negligence caused serious harm
and damages to plaintiff Pennavaria.

11.     Defendant DiClaudio was only present at the sentencing
because Judge Dalzell informed him to get his client, Pennavaria
to the sentencing to take advantage of the Blakely case that had
just been decided in June 2004. Thus, Judge Dalzell basically took
over the sentencing from the beginning of the  proceedings and
actually was Pennavaria's legal counsel.

12.     Defendant DiClaudio had prepared and concocted a ridiculous
story to be used for his closing argument. This story used as a closing
statement on behalf of Pennavaria, was about taking the Judge to
the corner of a Jewelry store and watching for drug dealers wearing
gold chains to go into the store and make purchases with drug money.

13.     Judge Dalzell was so taken and shocked at this line of
closing, that he informed defendant DiClaudio to quit while  he
was ahead and to please sit down.

14.     The conduct of attorney DiClaudio was seriously negligent,
and incompetent, and his actions and lack of due diligence caused
irreversible harm and damages to plaintiff Pennavaria.

15.     Defendant DiClaudio did not provide competent representation
for plaintiff Pennavaria. DiClaudio's lack of legal knowledge,
skill, thoroughness, and preparation necessary for effective client
representation, violated the Rules of Professional Conduct, Supra;
and caused harm and damages to plaintiff Pennavaria

16.     Defendant DiClaudio, prior to the sentencing hearing, advised plaintiff Pennavaria of his chances to return home to Murrysville, PA and self commit/surrender once the place of imprisonment was designated. DiClaudio said "I would not bet the house on it, but I would bet $10,000.00". Plaintiff Pennavaria took this as a better than average for a return to his home and wife, thus giving him the opportunity to clean up unfinished business, and make arrangements for his wife.

17.     Defendant DiClaudio's negligent and incompetent actions at the hearing made  this impossible. The prosecuting attorney argued against self surrender, sighting that I had missed the scheduled hearing date, and that I might not show up at prison. The prosecutor said I must be detained and not let go for the return to my home.

18.     Defendant DiClaudio's actions further prejudiced and caused serious harm and damages to plaintiff, by  not submitting anything to the judge about the plaintiff Pennavaria. There were no character witnesses, no sentencing memorandum, and no letters of recommendation solicited for the hearing.

19.     The negligent and incompetent actions by defendant DiClaudio, caused the judge to look at Pennavaria with a one-sided perspective, only the one portrayed by the Government, which by nature, is negative, to say the least.

20.     The conduct of defendants attorney Scott DiClaudio and Louis T. Savino & Associates, was willful, wanton, reckless and malicious, and their conduct constituted conscious  and intentional wrong doing, causing plaintiff Pennavaria to suffer harm and damages.

**WHEREFORE,** Plaintiff Pennavaria demands judgement against Attorney scott DiClaudio and Louis T. Savino & Associates, jointly, severally, and in the alternative, for:

    A. Compensatory Damages;
    B. Punitive Damages;
    C. Interest;
    D. Cost of suit;
    E. Attorneys fees;
    F. Special and Consequential Damages; and
    G. Any other relief the Court may deem equitable and just.

## COUNT FIVE

1.      Plaintiff Thomas Pennavaria repeats and reiterates each and every paragraph of Counts One, Two, Three, and Four of this Complaint as though the same were set forth  at length herein.

2.      The conduct of Attorney Scott DiClaudio and Louis T. Savino & Associates constituted misrepresentation, intentional and/or negligent misrepresentation.

3.      As a direct and proximate result of the intentional and/or negligent misrepresentation, Thomas Pennavaria was  damaged.

4.      Attorney Scott DiClaudio and Louis T. Savino  & Associates violated the Rule of Professional Conduct, Supra, in connection with the discharge of their responsibilities and duties owed to plaintiff, Thomas Pennavaria.

**WHEREFORE,** Plaintiff, Thomas Pennavaria, demands judgement against Attorney Scott DiClaudio and Louis T. Savino & Associates, jointly, severally, and  in the alternative, for:

    A. Compensatory Damages;
    B. Punitive Damages;
    C.  Interest;
    D. Cost of suit;
    E. Attorneys fees; and
    F. Any other relief the Court may deem equitable and just.

### COUNT COUNT SIX

1.      Plaintiff, Thomas Pennavaria, repeats and reiterates each and every paragraph of Counts One, Two, Three, Four, and Five of this Complaint as though the same were set forth at length herein.

2.      Attorney Scott DiClaudio and Louis T. Savino & Associates breached their respective duties owed to plaintiff, Thomas Pennavaria, and acted in a wanton and willful disregard of the rights of Thomas Pennavaria.

3.      As a direct and proximate result of the wanton and willful conduct on part of the defendants, the plaintiff suffered damages.

4.      The conduct of attorney Scott DiClaudio and Louis T.  Savino & Associates was egregious, and the defendants acted in a willful, wanton , reckless, or malicious manner and were consciously wrongdoers against the plaintiff, Thomas Pennavaria.

5.      Furthermore, the defendants acted deliberately with knowledge of a high degree of probability of harm and reckless indifference to the consequences to the Plaintiff, Thomas Pennavaria.

6.      The conduct of attorney Scott DiClaudio and Louis T. Savino & Associates, jointly, severally, and in the alternative, constituted gross negligence.

7.      As a direct and proximate result of the Defendants wanton, reckless, malicious, willful conduct, and gross negligence, the plaintiff has suffered damages.

**WHEREFORE,** Plaintiff, Thomas Pennavaria demands judgement against Attorney Scott DiClaudio and Louis T. Savino & Associates, jointly, severally and in the alternative, for:

A. Compensatory Damages;
B. Punitive Damages;
C. Interest;
D. Cost of suit;
E. Attorney fees
F. Damages for Emotional Distress and Mental Anguish;
G. Special and Consequential Damages; and
H. Any other relief the Court may deem equitable and just.

## COUNT SEVEN

1.      Plaintiff, Thomas Pennavaria, repeats and reiterates each
and every paragraph of Counts One through Six, inclusive, of this
Complaint as though the same were set forth at length herein.

2.      Defendant Scott DiClaudio violated the Professional Conduct
Rules, specifically Rule 1.4, Communications:

(a) **Shall** keep a client informed about the status of a
matter and **promptly** comply with reasonable requests
for information;

(b) **Shall** explain a matter to the extent necessary to permit
the client to make informed decisions.

[The word **shall** is imperative per the Preamble: A Lawyers
Responsibilities, under the heading "Scope"] Constitution of PA., Supra

3.      A  Notice of Appeal was filed by the Government on September
1, 2004, appealing the sentence imposed on plaintiff, Thomas Pennavaria.
This appeal was a direct appeal filed in The Circuit Court of Appeals
for the Third Circuit. Defendant DiClaudio was negligent in not
informing plaintiff Pennavaria of the pending action on direct
appeal.

4.      Plaintiff Pennavaria found out about the direct appeal
sometime early in 2005, when Pennavaria ordered a copy of his docket.
Plaintiff Pennavaria tried to contact DiClaudio for an explanation.
Defendant DiClaudio would not accept phone calls nor answer written
correspondence in regards to the direct appeal taken by the Government.

5.      Plaintiff Pennavaria wrote a letter on March 29, 2005 directed
to Judge Stewart Dalzell, wherein Pennavaria was voicing concern
for his worst fear, no representation by counsel of record. Pennavaria
explained of the negligent and incompetent representation that
attorney DiClaudio was displaying.

6.      Pennavaria explained the total lack of cooperation from
DiClaudio, and further, that the first knowledge of the direct
appeal taken by the government to the Third Circuit Court of Appeals,
was in a letter received from Judge Dalzell dated July 24, 2005.

7.      Plaintiff Pennavaria sent 2 letters on January 27,2005.
One to defendant DiClaudio and one to the Clerk of the Court for
the Third Circuit Court of Appeals. DiClaudio's letter was sent
with proof of delivery and return receipt requested.

8.      Defendant DiClaudio signed the return receipt as proof
of delivery, but decided not to answer Plaintiff Pennavaria's letter.
The Clerk of Courts did answer the letter sent to the Court. The
reply letter from the Clerk was dated January 31, 2005 and notified
Plaintiff Pennavaria that attorney DiClaudio was still the attorney
of record for the direct appeal in the Circuit Court.

9.      Plaintiff Pennavaria received another letter from the Clerk
of Court on March 17, 2005 in reply to Pennavaria's letter of March
9, 2005 requesting another docket, after a decision by the US Supreme
Court was reached in Booker.

10.     In the most recent docket received on March 17, 2005 there
was notation that the Clerk had given an "order" to the Government
to show cause why the District Court decision should not be summarily
affirmed. The deadline for that order to file was March 21, 2005.

11.     On that very same day of March 17, 2005, Pennavaria's counselor at FCI Loretto informed Pennavaria of a scheduled attorney call in his office for the next day, March 18, 2005  at  2:30PM, from attorney DiClaudio. Pennavaria subsequently reported to Counselor Zedack's office at 2:15PM March 18, 2005 to accept the call from DiClaudio. Pennavaria continued to wait until 3:45PM, and the call never came. Counselor Zedack sent Pennavaria back to his living quarters, as it was the institutional count time.

12.     Plaintiff Pennavaria was put in a state of extreme fear, as the Government intended to increase the original sentence to 10 years. Pennavaria's fear mounted knowing that the deadline to file was approaching.

13.     Pennavaria again ordered an updated docket to see if the Government and DiClaudio had filed their briefs. It was discovered that the Government did in fact, make the deadline and filed a response. It was also discovered that DiClaudio had not responded or filed any thing on behalf of plaintiff Pennavaria.

14.     Plaintiff Pennavaria immediately called attorney DiClaudio after reviewing the docket, on March 24, 2005. Pennavaria was informed by a representative of Louis T. Savino & Associates that attorney DiClaudio was no longer associated with their law firm. Pennavaria asked the representative if she could give a new number for DiClaudio, and a new number was given.

15.     Plaintiff Pennavaria added the new number to his prison phone number list  and it was activated on March 28, 2005. Pennavaria called the new number on March 28, 2005, explaining to a receptionist that the call was an emergency; she stated she would send right [it] through to DiClaudio. She rang his office and my call was received by a voice mail system.

16.      I explained the severity of  the call  asking about the
Government's appeal brief, what it contained and what his response
would be, and when he might file it. This was done to a voice mail
system. I also stated that I would call him on his cell phone the
following day, March 29, 2005, and that I prepaid for all of my
calls and that it would cost him nothing and please accept my call.

17.      Plaintiff Pennavaria made the call on March 29, 2005 at
3:35 PM, DiClaudio answered the cell phone and when Pennavaria
identified himself, DiClaudio cancelled the call, refusing to talk.

18.      Plaintiff Pennavaria was  in dire straights, fearing the
unknown for his family and himself. Judge Dalzell stated that DiClaudio
was still my attorney. I asked if he was not an officer of the
court and did he not have a  set of professional rules of conduct
to abide by, not only professionally, but morally after accepting
a fee as paid in full.

19.      The conduct of attorney DiClaudio and Louis T. Savino &
Associates, jointly, severally, and in the alternative, was egregious
towards plaintiff Pennavaria in that the defendants DiClaudio and
Savino, did act in a willful, wanton, reckless, and malicious manner
and were concious wrongdoers against Pennavaria.

20.      Further, attorney DiClaudio and Louis T. Savino & Associates,
jointly, severally, and in the alternative, did act deliberately
with knowledge of a high degree  of probability of harm to plaintiff
Pennavaria and did act with reckless indifference to the consequences
of their conduct  and harm suffered by Pennavaria.

21.      As a direct and proximate result of the conduct of Attorney
DiClaudio and Louis T. Savino & Associates, jointly, severally,
and in the alternative, plaintiff Thomas Pennavaria suffered damages.

**WHEREFORE,** plaintiff, Thomas Pennavaria demands judgement against attorney Scott DiClaudio and Louis T. Savino & Associates, jointly, severally, and in the alternative, for:

    A. Compensatory Damages;
    B. Punitive Damages;
    C. Interest;
    D. Cost of suit;
    E. Attorney fees;
    F. Damages for emotional distress and mental anguish;
    G. Special Damages;
    H. Any other relief the Court may deem equitable and just.

## COUNT EIGHT

1.    Defendant DiClaudio's lack of competent representation, his lack of legal knowledge, lack of skill, his lack of thoroughness and his absolute negligence, prompted plaintiff Pennavaria to initiate a complaint to the Disciplinary Board of the Supreme Court of Pennsylvania, on March 31, 2005.

2.    Upon notice from the Disciplinary Board, defendant DiClaudio arranged an attorney call to plaintiff Pennavaria scheduled for May 23, 2005 at 4:00PM. This was the first attempt of defendant DiClaudio to make contact with plaintiff Pennavaria, and was done only after notice of the complaint against him

3.    The purpose of the call was DiClaudio asking for Pennavaria to write a letter to the Disciplinary Board, explaining that he and I had only a communication breakdown. DiClaudio actually begged Pennavaria to write the letter that very evening, and to mail a copy of the contents to him.

4.    Plaintiff explained that the problem with him was much greater, explaining his lack of respect and cooperation in my case, and to both Pennavaria, and his wife personally.

5.      Defendant DiClaudio promised a copy of the Government's brief, which was filed sometime in April, and to also work on a reply brief on behalf of Plaintiff Pennavaria, the weekend of June 11, & 12, in fact, when the date to hear the Government's appeal had already passed.

6.      Defendant DiClaudio offered to do the aforementioned two items in exchange for plaintiff Pennavaria's dropping of the complaint to the Disciplinary Board. The end result was his refusal to file a reply brief to the Government's brief, his refusal to mail plaintiff Pennavaria requested documents in a timely fashion, and his refusal to accept phone calls from plaintiff Pennavaria or his wife.

7.      Defendant DiClaudio, through his negligent and incompetent actions, his unprofessional and improper representation, had placed the plaintiff's life and that of his family, in serious harms way. His actions exposed Pennavaria to more  than twice the original sentence imposed or up to 10 years.

8.      Plaintiff Pennavaria sought the advice of another law firm and mailed a letter about the refusal of DiClaudio to file a reply brief on behalf of Plaintiff Pennavaria; and that he stated let the chips fall where they may at the pending resentencing hearing.

9.      Pennavaria received a reply letter from attorney Robert A. Ratliff wherein he states: "I think it is very egregious that your current counsel has refused to file a brief on your behalf". In furtherance, "This is an important issue, not just for you, but for everyone sentenced in the 3rd Circuit".

10.     Defendant DiClaudio violated Professional Conduct Rules, and put plaintiff Pennavaria in serious harm and caused serious damages to Pennavaria. Specifically Rule 1.1, 1.3, 1.4 and 7.1, Supra.

**WHEREFORE,** Plaintiff, Thomas Pennavaria demands judgement against attorney Scott DiClaudio and Louis T. Savino & Associates, jointly, severally, and in the alternative, for:

    A. Compensatory damages;
    B. Punitive Damages;
    C. Interest;
    D. Cost of suit;
    E. Attorney fees;
    F. Damages for emotional distress and mental anguish;
    G. Special Damages; and
    H. Any other relief the Court may deem equitable and just.

### COUNT NINE

1.     Plaintiff Thomas Pennavaria repeats and reiterates each and every paragraph of Counts One through Eight, inclusive of this Complaint as though the same were set forth at length herein.

2.     Defendants Scott DiClaudio and Louis T. Savino & Associates misrepresented, concealed, and otherwise made statements to plaintiff Thomas Pennavaria which they knew,   false or should have known were false.

3.     The plaintiff, Thomas Pennavaria, relied upon these statements to his detriment.

4.     As a direct and proximate result of the concealment, and misrepresentation, both intentional and negligent, by the defendants Scott  DiClaudio, attorney, and Louis T. Savino & Associates, the plaintiff, Thomas Pennavaria, was caused to suffer damages, including special damages.

5.     Plaintiff Pennavaria states the facts and approximate dates surrounding the allegations of misrepresentation, false statements and concealment are in part, but not limited to the following:

(a)   On or about April 14, 2004 defendant DiClaudio represented that a plea agreement for a term of imprisonment for 37 months had been negotiated with the Office of the United States Attorney.

(b)   In or around February 2004, defendant DiClaudio represented that the criminal charges brought against Pennavaria were very easy to beat, and that we should win, a trial by jury.

(c)   A total fee of $10,000.00 was discussed in February of 2004, then raised to $13,000.00 for additional trial days, when in fact defendant DiClaudio had no intention to proceed to trial.

(d)   On August 5, 2004 at Pennavaria's sentencing hearing, a document was discovered in the possession of defendant DiClaudio. This document bears DiClaudio's hand writing, and the number 54 months was scratched out and then 57 months was written, for sentence.

(e)   The written months of 57 is proof positive that defendant diClaudio never had a 37 month plea agreement negotiated  with the United States Attorneys Office.

(f) DiCluadio, gave the impression that plaintiff Pennavaria could return to his home after sentencing to take care of business.

(g)   Defendant DiClaudio, only after a complaint was filed against him, promised to prepare and file reply brief in answer and rebuttle of the Government's direct appeal brief in the 3rd Circuit Court of Appeals.

**WHEREFORE, Plaintiff,** Thomas Pennavaria, demands judgement against attorney Scott DiClaudio and Louis T. Savino & Associates, severally, jointly, and in the alternative, for:

A. Compensatory Damages;
B. Punitive Damages;
C. Cost of suit;
D. Attorneys fees
E. Special Damages; and
F. Any other relief the Court may deem equitable and just.

## COUNT TEN

1.      Plaintiff, Thomas Pennavaria, repeats and reiterates each and every paragraph of Counts One through Nine, inclusive, of this Complaint as though the same were set forth at length herein.

2.      Plaintiff Pennavaria had on numerous occasions requested documents of various nature, including, but not limited to; criminal indictment, sentencing transcript, and the entire client file in the possession of defendant DiClaudio. At no time was any request for documents honored by defendant DiClaudio.

3.      Defendant DiClaudio would not even send requested documents to Pittsburgh attorney Patrick J. Thomassey, or accept or return any phone calls from Attorney Thomassey (the original attorney of plaintiff Pennavaria in the criminal proceedings).

4.      Plaintiff Pennavaria specifically requested a copy of his entire file from defendant DiClaudio on January 29, 2007 pursuant to Federal Rules of Civil Procedure, Rule 34, "Request for Production of Documents".

5.      Defendant DiClaudio chose not to honor Pennavaria's request and after 30 days without any response, was in violation of FRCP, Rule 34.

6.      Plaintiff Pennavaria subsequently filed a "Motion For Order Compelling Production Of Documents" in the U.S. Federal Court for the Eastern District of Pennsylvania on March 2, 2007. See Misc. Action No. 07-39.

7.      Plaintiff Pennavaria's Motion was reviewed by Judge Stewart Dalzell, who was the judge in the criminal proceedings, and Judge Dalzell granted Pennavaria's Motion to Compel. An order was issued to defendant DiClaudio on March 9, 2007, and DiClaudio was given until April 9, 2007 to produce the requested documents to Pennavaria.

(24)

8.    Defendant DiClaudio again chose to not honor even an order issued by a U.S. Federal Court Judge, and did not comply with the production of the documents.

9.    Plaintiff Pennavaria filed another motion on April 13, 2007, titled: "Motion To Enforce Court Order And Hold Attorney DiClaudio In Contempt.

10.    Defendant DiClaudio finally sent the client file of Pennavaria to Pennavaria in Morgantown, West Virginia. The client file consisted of one sheet of notebook paper (a copy of) written in pencil, from the very first meeting held in February 2004 at defendant DiClaudio's office located in the law firm of Louis T. Savino & Associates.

11.    The sheet of paper sent to plaintiff Pennavaria, purported to be the "client file", was useless. It was a short fact sheet with Pennavaria name, address, and birthdate. It also had the Pittsburgh attorney name and address for Patrick Thomassey. Further, three phone numbers given by Pennavaria.

12.    Defendant DiClaudio also included a fake and fraudulent letter in the mailing of requested documents. This letter was undated and unsigned, and was sent to give an appearance that DiClaudio had written the letter in the past to Pennavaria. The letter was created and appeared to cover some of the complaints that Pennavaria raised about the ineffective, negligent, and incompetent representation given to Pennavaria from DiClaudio. It is plain to see that the letter is another lie, fraudulent act of deceit, and a cover up to violating Professional Conduct Rule 1.4; **Communications**. Supra paragraph (a).

13.     In furtherance, defendant DiClaudio was reluctant to forward the client file of Pennavaria, as the file contained nothing of value to Pennavaria. Further, the documents requested by Pennavaria were needed to prove the negligent, and improper representation of attorney DiClaudio. The documents were proven, beyond a doubt, that DiClaudio did not have them, and that they never existed.

14.     Plaintiff Pennavaria requested, among other documents, all correspondence, phone communications, meetings, and any other contact with the U.S. Attorneys Office in regards to the negotiations of Pennavaria's alleged 37 month plea agreement.

15.     Plaintiff Pennavaria requested records of any contact with individuals to be used as character witnesses or individuals who were to write letters in support of Pennavaria.

16.     Plaintiff Pennavaria requested copies of any and all medical records collected on his behalf to be used at sentencing. Further, requesting a report of the number of hours utilized in obtaining the requested information and documents. Pennavaria also requested a copy  of any sentencing memorandum that was to be used at sentencing.

17.     It was clearly evident that none of the requested documents and information requested by plaintiff Pennavaria ever existed, further supporting plaintiff's claim  of negligent and incompetent representation, and that defendant DiClaudio lacked the required legal knowledge, skill, throughness and preparation necessary for effective representation of counsel.

18.     At all times mentioned herein in this pleading and subsequent thereto, the Defendants, Attorney Scott DiClaudio and Louis T. Savino & Associates, did advertise and did otherwise hold themselves out as persons engaged in the business of providing to the public legal services to represent clients in defense of Federal Criminal

Charges to induce persons such as Thomas Pennavaria to retain their services.

18.      Defendants Scott DiClaudio, attorney and Louis T. Savino & Associates did act unlawfully in rendering or failing to render the services; did act, use, or employ certain unconscionable commercial practices, deceptive frauds, false pretenses, false promises, misrepresentat or did knowingly conceal, suppress, or omit certain material facts with intent that plaintiff Pennavaria would rely upon such concealment, suppression, or omission in connection with the implied effective representation of Pennavaria in defending Pennavaria against the Federal Criminal Charges brought against him.

19.      As a  direct and proximate result and consequence of the use or employment by the defendants, Scott DiClaudio and Louis T. Savino & Associates, jointly, severally, and in the alternative, of the above methods, acts and practices, plaintiff Thomas Pennavaria did rely upon those actions of the defendants, and did suffer serious harm and damages.

        **WHEREFORE,** Plaintiff, Thomas Pennavaria demands judgement against Attorney Scott DiClaudio and Louis T. Savino & Associates, jointly, severally, and in the alternative, for:

        **FIVE MILLION DOLLARS (5,000,000.00)**

## COUNT ELEVEN

1.      Plaintiff, Thomas Pennavaria, repeats and reiterates each and every paragraph of Counts One through Ten, inclusive, of this Complaint as though the same were set forth at length herein.

2.      Plaintiff, Thomas Pennavaria, filed a Motion in the Third Circuit Court of Appeals petitioning the court to terminate defendant DiClaudio as legal counsel for Pennavaria. Many of the allegations used in this instant suit were used in that 3rd Circuit Motion, and additional information.

3.      Based on the overwhelming charges and supporting evidence in support of the Motion, the Motion for termination was granted. Thus, attorney Scott DiClaudio was not permitted to further harm plaintiff Pennavaria, by his negligent and ineffective representation.

4.      The 3rd. Cir. Court of Appeals appointed the Federal Community Public Defenders Office in Philadelphia to represent Pennavaria in the direct appeal filed by the Government in that very court.

5.      When the order was received by the Public Defenders Office, it was realized that Plaintiff Pennavaria's case was a Precedent setting case. Therefore, David L. McColgin, Supervising Appellate Attorney for the Public Defenders Office, personally chose Pennavaria's case for representation.

6.      Pennavaria's case on appeal in the 3rd. Circuit was indeed, a very important case, not only to Pennavaria, but the 3rd. Cir. Public Defenders office, and all other future defendants coming after Pennavaria.

7.      The 3rd. Circuit Court of Appeals made a decision in the case and filed it on April 24, 2006, marked as **PRECEDENTIAL.** See 445 F.3d 720 (3rd Cir. 2006). Pennavaria's sentence was vacated and the case was remanded to the District Court for resentencing

**in light of __Booker__.** This decision was very detrimental to Pennavaria, as his exposure was now increased from an original 46 month sentence to a 10 year sentence. The unfavorable decision was appealed to the United States Supreme Court by Attorney David L. McColgin, and Cert. was denied.

8.      Defendant DiClaudio's refusal to prepare any argument on behalf of his then client, Pennavaria, caused severe emotional distress, undue harm and damages to Pennavaria.

9.      The conduct of attorney Scott DiClaudio was of such a negligent manner, that he went as far as to say: "You (Pennavaria) got everything that was coming to you" in the first sentencing. Also, that there was no need to prepare anything for the  resentencing. This statement was made knowing of the statement in the sentencing transcript made by Judge Dalzell:      " If not restrained by the mandatory nature of the guidelines, I would sentence to at least double".

10.     When Pennavaria reminded  DiClaudio of this statement by the Judge, he stated that we would have to hope that he was in a good mood the day of resentencing, and I would have to throw myself on the mercy of the Court.

11.     Defendant's DiClaudio and Savino breached their duties to plaintiff Pennavaria by their failure to exercise the knowledge, skill, ability, and devotion ordinarily possessed and employed by members of the legal profession similarly situated, in connection with the discharge of their responsibilities to Plaintiff, Thomas Pennavaria, and breached their duties to utilize reasonable care and prudence in connection with those responsibilities.

12.      As a direct and proximate result of the negligence, jointly, severally, and in the alternative of attorney Scott DiClaudio and Louis T. Savino & Associates, Thomas Pennavaria was caused to suffer harm, damages, and severe emotional distress.

**WHEREFORE,** the Plaintiff, Thomas Pennavaria demands judgement against attorney Scott DiClaudio and Louis T. Savino & Associates, jointly, severally, and in the alternative for:

**FIVE MILLION DOLLARS ($5,000,000.00)**

**COUNT TWELVE**

1.      Plaintiff, Thomas Pennavaria, repeats and reiterates each and every paragraph of Counts One through Eleven, inclusive of this Complaint as though the same were set forth at length herein.

2.      The conduct of attorney Scott DiClaudio and Louis T. Savino & Associates, was professionally negligent, careless, and constituted a breach of the fiduciary relationship which each had with Plaintiff Thomas Pennavaria.

3.      As a direct and proximate result of the professional negligence, carelessness, and breach of fiduciary relationship, Thomas Pennavaria was damaged.

4.      Defendants DiClaudio and Savino violated almost every Rule of Professional Conduct, in connection with the discharge of their responsibilities and duties owed to Thomas Pennavaria, to include, but not limited to:

Rule 1.1    Competence

Rule 1.3    Diligence

Rule 1.4    Communication

Rule 1.5    Fees

Rule 1.16   Declining or Terminating Representation

Rule 7.1    Communications Concerning a Lawyer's Services
            (b) created an unjustified expectation about results
            the lawyer can achieve. ie., 37 month plea agreement.

5.      Defendant, Scott DiClaudio, through his negligent, carless, reckless, incompetence, skill, throughness, lack of legal knowledge, and lack of preparation necessary for effective representation, caused undue and sever harm, damages, emotional distress, and a sentence much greater than originally agreed to in the plea agreement.

6.      Defendant, Scott DiClaudio, per all items aforesaid mentioned in number 5, caused Plaintiff Pennavaria's sentence to be increased from 46 months to 60 months. In furtherance, because of the same aforementioned actions, exposed Pennavaria to a possible resentencing of 10 years.

        **WHEREFORE,** Plaintiff, Thomas Pennavaria, demands judgement against attorney Scott DiClaudio and Louis T. Savino & Associates, jointly, severally, and in the alternative, for:

## FIVE MILLION DOLLARS ($5,000,000.00)


## COUNT THIRTEEN

1.      Plaintiff, Thomas Pennavaria, repeats and reiterates each and every paragraph of Counts One through Twelve, inclusive, of this Complaint as though the same were set forth at length herein.

2.      In further support of Plaintiff Pennavaria's assertion of malpractice against defendants DiClaudio and Savino, Pennavaria states that a resentencing was held on January 11, 2007 in the United States District Court for the Eastern District of Pennsylvania. This hearing was, again, in front of Judge Stewart Dalzell.

3.      Judge Dalzell conducted the hearing and the prosecution for the Government was trying for the top end of the new guideline, 105 months, or more. Judge Dalzell remembered the first sentencing and made reference to his statement that he would have sentence to at least double, if he could.

4.      After hearing arguments from both sides, Judge Dalzell stated that the **Sentencing Memorandum** prepared by attorney David L. McColgin on behalf of Pennavaria was excellent. Further, after hearing Pennavaria talk about the sentence and situation at hand, the Judge decided to take a short recess.

5.      After the recess, Judge Dalzell stated that prior to the hearing, he had every intention of imposing at least a sentence of 105 months, and possibly 120 months that the Government requested. It was clearly evident that his decision was drastically altered by the preparation of the "sentencing memorandum", and the speech given by Pennavaria. Absent of those two very important items, the sentence would have been considerably higher.

6.      Judge Dalzell decided to impose a below the guideline sentence of 60 months, which in itself was a great accomplishment, but still 23 months higher than the original plea agreement, believed to be 37 months by Pennavaria. (As told it would be by attorney DiClaudio).

7.      Therefore, the outcome of the resentencing was favorable as could have been expected by Pennavaria, but only adds to Pennavaria's assertions of ineffective, negligent, careless, and incompetent representation experienced with attorney DiClaudio.

8.      Pennavaria would like to repeat the fact that defendant DiClaudio refused to answer the Government's direct appeal brief, refused to prepare anything in preparation for the upcoming re-sentencing hearing of January 11, 2007, and did no preparation whatsoever for the original sentencing that took place on August 5, 2004.

9.      The results of the resentencing, with the proper preparation, proper representation, proper knowledge of the law, keeping updated on new case law that effects your clients case, having the necessary skills, throughness, ability, and presentation in general, proves an absolute must for effective representation.

10.     As mentioned above and throughout this entire complaint, it is clearly evident that the negligent representation of attorney DiClaudio caused absolute harm and damages, and created an additional 23 months of imprisonment through his misrepresentation of Pennavaria.

        **WHEREFORE,** Plaintiff, Thomas Pennavaria, demands judgement against attorney Scott DiClaudio and Louis T. Savino & Associates, jointly, severally, and in the alternative, for:

<u>**FIVE MILLION ($5,000,000.00) DOLLARS**</u>

(33)

## COUNT FOURTEEN

1.      Plaintiff, Thomas Pennavaria, repeats and reiterates each and every paragraph of Counts One through Thirteen, inclusive, of this Complaint as though the same were set forth at length herein.

2.      Plaintiff, Thomas Pennavaria, was "prejudiced" since he obtained a sentence far greater than the 37 months that was to be given in exchange for signing a plea agreement. See Glover v. United States, 148 L Ed 2d 604 where the Supreme Court of the U.S. of America held; that if the defendant can show that he would have received 1 day less time then that "satisfies the prejudice prong for ineffective assistance of counsel". See also, U.S. v. Quackenbush, 369 F. Supp 2d 958 (WD TENN 2005).

3.      Plaintiff, Thomas Pennavaria, is attacking the end result of his sentence of 60 months (23 months more than the plea agreement), and Thomas Pennavaria bears the burden of establishing that he suffered some sort of prejudice from his attorneys ineffectiveness. See Lewis v. Alexander, 11 F3d 1349, 1352 (6th Cir. 1993..." id. 964.

4.      Plaintiff, Thomas Pennavaria, through the facts and statements held in the within Complaint for Legal Malpractice, has more than established the fact that he, in deed, suffered prejudice from his attorneys ineffectiveness.

5.      The conduct of defendants DiClaudio and Savino, jointly, severally, and in the alternative, was egregious towards Thomas Pennavaria, in that the defendants did act in a willful, wanton, reckless, and malicious manner and were conscious wrongdoers against Plaintiff, Thomas Pennavaria.

6.      The defendants misrepresented, concealed, and otherwise made statements to Thomas Pennavaria which they knew to be false or should have known were false.

7.     The defendants breached their respective duties to Thomas Pennavaria and acted in a wanton and willful disregard of the rights of Thomas Pennavaria.

8.     As a direct and proximate result of the concealment, fraud, and misrepresentation, both intentional and negligent, by the defendants, DiClaudio and Savino, the Plaintiff, Thomas Pennavaria, was caused to suffer an extended term of imprisonment, thus, creating emotional distress, mental anguish, and torture.

WHEREFORE, Plaintiff, Thomas Pennavaria demands judgement against attorney Scott DiClaudio and Louis T. Savino & Associates, jointly, severally, and in the alternative, for:

## FIVE MILLION DOLLARS  ($5,000,000.00)

## COUNT FIFTEEN

1.     Plaintiff, Thomas Pennavaria, repeats and reiterates each and every paragraph of Counts One through Fourteen, inclusive, of this Complaint as though the same were set forth at length herein.

2.     Plaintiff, Thomas Pennavaria, states that a guilty plea is only voluntary and intelligently made, "with sufficient awareness of the relevant circumstances and likely consequences." See Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970); accord North Carolina v. Alford, 400 U.S 25,31,91 S.Ct. 160,164, 27 L.Ed.2d 162(1970) (plea must "represent[] a voluntary and intelligent choice among the alternative courses of action open to the defendant").

3.     A plea is not voluntary or intelligent if the advice given by defense counsel on which the defendant relied in entering the plea falls below the level of reasonable competence such that the

defendant did/ does not receive effective assistance of counsel.
See Hill v. Lockhart, 474 U.S. 52, 56-60, 106 S.Ct. 366, 369-71,
88 L.Ed.2d 203 (1985); Tollett v. Henderson, 411 U.S. 258, 267
93 S.Ct. 1602, 1608, 36 L.Ed2d 235  (1973). The court has developed
a two part test to determine whether the advice of counsel on which
the defendant relied in entering a plea agreement sinks to the
level of ineffective assistance of counsel under the Sixth Amendment.
First, "the defendant must show that counsel's representation fell
below an objective standard of reasonableness.'" Hill, 474 U.S.
at 57, 106 S.Ct.at 369 (quoting Strickland v. Washington, 466 U.S
668, 687-88, 104 S.Ct. 2052,2064, 80 LEd. 2d 674 (1984). Second,
"the defendant must show that there is reasonable probability that,
but for counsel's errors, he would not have pleaded guilty, and
would have insisted on going to trial." Id. 474 U.S. at 59, 106
S.Ct. at 370. The Court defined a reasonable probability as "a
probability sufficient to undermine confidence in the outcome."
Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

4.      Plaintiff, Thomas Pennavaria, claims that: Given the considerable
discretion to be given counsel, a defendant is more likely to prevail
on an ineffective assistance of counsel claim where the error pointed
to arises from counsel's lack of diligence, rather than the exercise
of  judgement. 2 W. LaFave & J. Israel, Criminal Procedure § 11.10(c)
at 44 (Supp.1990). "Courts will far more readily find incompetency
where there has been an abdication-not an exercise-of professional
judgement." Id. (internal quotes omitted).

5.      Applying these principals to the facts in Plaintiff, Thomas
Pennavaria's case, it is clearly evident that the conduct of attorney
Scott DiClaudio, fell below the standard of competence. Moreover,

Attorney DiClaudio knew that one of the key factors inducing Plaintiff Pennavaria to accept the plea bargin was, Pennavaria's belief that by so doing, he would reduce his potential exposure from 16 years imprisonment to only 37 months. In furtherance, Pennavaria's indictment was for a total amount of money laundering of $60,000.00. DiClaudio also induced Pennavaria to stipulate in the plea agreement to an amount of $120,000. to $200,000.00 (Dollars). This increase over and above the amount actually in the indictment, greatly increased the base point level of Pennavaria. However, it was explained by DiClaudio to Pennavaria, that it would not matter what amount was stipulated to, as the plea agreement was for 37 months. See U.S. v. Loughery, 908 F.2d 1014 (D.C. Cir. 1990).

6.      Plaintiff, Thomas Pennavaria, contends that there is at least a reasonable probability-sufficient to undermine any confidence to the contrary-that but for DiClaudio's failure to inform Pennavaria of 188 months, exposure and its implications, Pennavaria "would not have pleaded guilty [but] would have insisted on going to trial."

7.      This is not a case where counsel has made a strategic decision that in retropect, with the benefit of hindsight, appears to have been ill-advised. Rather, DiClaudio's conduct evinces an abdication of his responsibility to Pennavaria, and it is in such cases that courts most typically find that counsel's performance was below the requisite level of competence. See 2 W. LaFave & J. Israel, supra, § 11.10(c), at 44.

8.      Pennavaria's right to a jury trial was violated, as Pennavaria was deprived of this opportunity by DiClaudio's breach of his duty to fully explain all the ramifications and extent of exposure to Pennavaria, even with the signing of a plea agreement.

9.      Plaintiff, Thomas Pennavaria, but for the false, misleading, and untrue statements involving the plea greement, made by Attorney DiClaudio, would not have signed a plea agreement that had an "open ended" imprisonment term.

10.     Defendants Scott DiClaudio, and Louis T. Savino & Associates did act unlawfully in rendering or failing to render the services; did act, use, or employ certain unconscionable practices, deceptive and fraudulent statements, false pretenses, false promises, misrepresentations, or did knowingly conceal, suppress, or omit certain material facts with intent that Thomas Pennavaria would rely upon such facts, such concealment, suppression, or omission in connection with inducing Thomas Pennavaria to sign a plea agreement for a total term of imprisonment of 37 months, when in fact, the 37 month plea agreement **NEVER EXISTED**.

11.     As a direct and proximate result and consequence of the use or employment by the defendants, attorney Scott DiClaudio, and Louis T. Savino & Associates, jointly, severally, and in the alternative, of  the above methods, acts and practices, Plaintiff, Thomas Pennavaria, did rely upon those actions, in agreeing to sign a 37 month plea agreement, and by so doing did suffer harm and damages.

        **WHEREFORE,** Plaintiff, Thomas Pennavaria, demands judgement against defendants, attorney Scott DiClaudio and Louis T. Savino & Associates, jointly, severally, and in the alternative, for:

        ## FIVE MILLION DOLLARS($5,000,000.00)

## COUNT SIXTEEN

1.      Plaintiff, Thomas Pennavaria, repeats and reiterates each and every paragraph of Counts One through Fifteen, inclusive, of this Complaint as though the same were set forth at length herein.

2.      Plaintiff, Thomas Pennavaria, states that not only was he, the plaintiff made to suffer damages, but that Plaintiff's wife, Mrs. Brenda Pennavaria was caused to suffer harm and damages. The harm and damages casued to Mrs. brenda Pennavaria was a direct result by & of the negligent and fraudulent actions of the defendants, attorney Scott DiClaudio and Louis T.Savino & Associates.

3.      Brenda Pennavaria, on the day of sentencing of Thomas Pennavaria, August 5, 2004, was at home in Murrysville, PA., preparing dinner for Thomas Pennavaria, expecting his arrival from the sentencing hearing held in Philadelphia. Brenda Pennavaria's birthday was the next day, August 6, 2004.

4.      When Plaintiff, Thomas Pennavaria failed to return home that evening, Brenda Pennavaria received a phone call from attorney Scott DiClaudio, explaining that her husband Thomas, was detained in the FDC, Philadelphia, but that he would only be there for a couple weeks. Brenda Pennavaria, expecting the return of Thomas, went as far as to change his return air ticket to an open date.

5.      Brenda Pennavaria knew of the arrangement that Thomas had made with attorney DiClaudio and had no reason to believe that they were false. She was under the belief that by signing the plea agreement and the deal made by signing such, that everything was fine and had been worked out in advance. She also knew of the very important letter sent to attorney DiClaudio, and was sure that the information contained in the letter, would more than satisfy theplea agreement deal.

6.      When Brenda Pennavaria finally realized that Thomas was not returning home, she was totally devastated. She began a series of phone calls to attorney DiClaudio, and he would not even accept her calls, nor would he return messages that she left.

7.      Brenda  Pennavaria was left alone, totally unprepared, and had to handle all affairs of the family. She listed her home on August 8, 2004 and it sold the very next day August 9, 2004. She had to dispose of her automobile, in returning back to the dealer where it was purchased. She had to pack her belongings, sale her furniture, put one  of her cats to sleep, and find a place to live. All the while, living in fear because of the people who came to her home, all hours of the day and night. She had to place sheets on the windows for privacy.

8.      The situation created for Brenda Pennavaria, directly caused by the false, negligent, and misrepresentation of facts by attorney DiClaudio, was too much to handle. Brenda Pennavaria suffered both mentally and physically. She experienced a 40 pound weight loss in a three to four week period and had a complete mental breakdown.

9.      Mrs. Pennavaria was admitted to Forbes Hospital in Monroeville, PA, and was near death. During her treatment for her physical condition, it was discovered that she was also in a severe state of depression, and was admitted to the mental ward of the same hospital. She remained in the mental ward for 8 days.

10.     Mrs. Pennavaria had been under the care of a Psychologist since 2002, and the current events caused the breakdown. Mrs. Pennavaria is under heavy medication, to this day, and is under the care of both physical and mental doctors.

11.     Mrs. Pennavaria was forced to relocate to Bountiful, Utah in June of 2006, and has not seen her husband of 40 years since then. She is considered a person in severe depression and suffers many medical conditions. She is on Social Security disbility as her only source of income, and she is on welfare for her medical assistance.

12.     Mrs. Pennavaria may never fully recover from the total devastation of the events surrounding her husband's imprisonment, and the length of the imprisonment term. This situation was enhanced and created as a direct result of the lack of professional and personal treatment given by DiClaudio, throughout the entire process of this instant case matter.

13.     Mrs. Pennavaria's mental state of mind was harmed and damaged by the actions of attorney DiClaudio. Brenda Pennavaria has long distance phone records of the many calls made in trying to reach her husband's attorney, but was just as futile as her husband in trying to get any cooperation from attorney DiClaudio, at all.

14.     Mrs. Pennavaria has records of trying to reach DiClaudio during the appeal process filed by the Government on direct appeal, and they are disturbing to say the least. When Brenda's calls were finally sent through to DiClaudio's office, when she stated the emergency nature of the call, DiClaudio chose not to take her call. In fact, when he realized it was her, he hung up on her. In one instance, going as far as saying, tell Mrs. Pennavaria I can't talk to her now, but to call back after 5:00PM, and I will be gone. This conversation was overheard by Brenda Pennavaria when DiClaudio's receptionist did not press the hold button on Mrs. Pennavaria's call, and used the intercom to DiClaudio.

15.     The conduct of Scott DiClaudio, attorney and Louis T. Savino & Associates, jointly, severally, and in the alternative, was egregious towards Plaitiff's wife, Brenda Pennavaria, in that defendants DiClaudio and Savino did act in a willful, wanton, reckless, and malicious manner and were conscious wrongdoers against Plaintiff's wife Brenda Pennavaria.

16.     As a direct and proximate result of the conduct of the defendants, jointly, severally, and in the alternative, Plaintiff's Thomas Pennavaria, wife, Brenda suffered undue emotional stress, life threatening conditions, and severe harm and damages.

17.     As a direct and proximate result of the conduct of the defendants, jointly, severally, and in the alternative against Mrs. Pennavaria, caused further damage and  harm to Thomas Pennavaria. Causing additional emotional distress, harm, and damages, by causing said harm to  Mrs. Brenda Pennavaria.

    **WHEREFORE,** Plaintiff, Thomas Pennavaria, demands judgement against attorney Scott DiClaudio and Louis T. Savino & Associates, jointly, severally, and in the alternative, for:

    **FIVE MILLION DOLLARS ($5,000,000.00)**


### JURY DEMAND

    The Plaintiff, Thomas Pennavaria demands a trial by jury on all issues.

                    Respectfully submitted,


                    Thomas Pennavaria, pro se
                    Reg. No. 00804-068
                    Federal correctional Institution
                    P.O. Box 1000
                    Morgantown, WV 26507

## CERTIFICATE OF SERVICE

I certify that I mailed a copy of this **"Complaint for Legal Malpractice"** and all attachments via first class United States Mail, postage prepaid and affixed to the envelope, to the following parties at the addresses listed below:

```
Scott DiClaudio
Attorney At Law
Suite 900
15th & John F. Kennedy Blvd.
Two Penn Center Plaza
Philadelphia, PA 19102

Law Offices Of
Louis T. Savino & Associates
Suite 1516
15th & John F. Kennedy Blvd.
Two Penn Center Plaza
Philadelphia, PA 19102
```

ON THIS 4th DAY OF DECEMBER, 2007

```
Thomas Pennavaria
Reg. No. 00804-068
FCI Morgantown
P.O. Box 1000
Morgantown, WV 26507
```

<u>SCHEDULE OF EXHIBITS</u>

**TO BE OFFERED IN EVIDENCE AT TRIAL**

1. Original notice of trial date of 4-14-04, with DiClaudio's hand written notes of 54, then 57 months of imprisonment.

2. One page copy of notebook paper sent to Plaintiff, Thomas Pennavaria, as a client file.

3. All letters of correspondence between Pennavaria and the Disciplinary Board of the Supreme Court of Pennsylvania.

4. All letters of correspondence between Pennavaria and Judge Stewart Dalzell, and the Clerk of Courts for the US District Court for the Eastern District of Pennsylvania, and for the Third Circuit Court of Appeals.

5. All certified mail receipts, proof of delivery receipts and unanswered letters of correspondence between Plaintiff, Thomas Pennavaria and Attorney Scott DiClaudio.

6. All Motions prepared and submitted to the Third Circuit Court of Appeals, US District Court for the Eastern district of PA., copies of all granted Motions from same, no denials were made.

7. The entire Court Docket from start to finish in regards to the criminal case involving Plaintiff, Pennavaria.

8. Copies of 2 Bank Official Checks as proof of payment fees between defendant diClaudio, and Plaintiff Pennavaria.

9. Letter from Robert A. Ratliff, Attorney at Law, confirming the belief of intended harm to Pennavaria caused by the refusal of Defendant DiClaudio to file response brief to the Government's direct appeal to the 3rd Cir. court of Appeals.

10. Twenty pages of medical records for Plaintiff, Thomas Pennavaria.

11. Original sentencing transcript of August 5, 2004.

12. Resentencing transcript of January 11, 2007.

13. Copies of Motion to Vacate, Amend, or Correct sentence pursuant to § 2255.

14. All letters of correspondence between Plaintiff, Thomas Pennavaria and Attorney patrick J. Thomassey.

15. All letters of correspondence between 3rd. Cir. Court of Appeals Attorney David L. McColgin and Plaintiff Thomas Pennavaria.

16. The entire "Resentencing Memorandum" prepared by Attorney David L. McColgin on behalf of Pennavaria for use in the January 11, 2007 resentencing hearing of Pennavaria.

17.  All letters  of correspondence from Kimberly Collins, Paralegal for the Public Defenders Office and on behalf of David L. McColgin, to and from Plaintiff, Pennavaria.

18.  Letter from the medical doctor of Mrs. Brenda Pennavaria, Dr. Rebeccah A. Hoffman.

19.  Letters from the the Psychologist for Mrs. Brenda Pennavaria, Dr. Phyllis  R. Brentzel, Psy.D.

20.  The original Judgement and Commitment issued by Honorable Stewart Dalzell on August 5, 2004.

21.  The amended Judgement and Commitment issued by Honorable Stewart Dalzell on January 11, 2007.

22.  An amended/corrected Judgement and Commitment issued by Honorable Stewart Dalzell on August 22, 2007.

23.  All medical records prior to and after August 5, 2004, including hospital stay at Forbes Hospital, Monroeville, PA.

## <u>WITNESSES</u>

### TO BE CALLED BY PLAINTIFF, THOMAS PENNAVARIA

Patrick J. Thomassey
Attorney At Law
1940 James Street
Monroeville, PA 15146


David L. McColgin
Supervising Appellate Attorney
Community Public Defenders office
Suite 540 West - curtis center
601 Walnut Street
Philadelphia, PA 19106


Kimberly Collins
Paralegal Specialist
Community Public Defenders Office
Suite 540 West - Curtis Center
601 Walnut Street
Philadelphia, PA 19106


Mrs. Brenda Pennavaria
966 East 800 South
Bountiful, UT 84010

Dr. Rebeccah A. Hofmann
1000 Infinity Drive Suite 100
Monroeville, PA 15146


Phyllis R. Brentzel
Licensed Psychologist
12320 Route 30
North Huntingdon, PA 15642


Mrs. Rhandaline Ling